# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| NORTH CANTON BOARD OF EDUCATION, aka North Canton City School District Board of Education, | CASE NO. 5:16-cv-1420 |
| PLAINTIFF, | JUDGE SARA LIOI |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| AT&T INC., et al., | |
| DEFENDANTS. | |

Before the Court is the Rule 12(b)(6) motion to dismiss filed by defendants AT&T, Inc. ("AT&T"), New Cingular Wireless PCS, LLC ("Cingular Wireless"), and NCWPCS MPL 30-Year Sites Tower Holdings, LLC ("Tower Holdings") (collectively, "defendants") seeking dismissal of plaintiff's claim of tortious interference with contract and for punitive damages. (Doc. No. 28 ["Mot."].) Plaintiff North Canton Board of Education ("the District" or "plaintiff") has filed a memorandum in opposition (Doc. No. 30 ["Opp'n"]), and defendants have filed a reply (Doc. No. 35 ["Reply"]). For the reasons set forth herein, the motion is granted.

## I. BACKGROUND

Plaintiff filed its complaint on June 10, 2016, alleging that it has a contract with Cingular Wireless and Tower Holdings, twice amended, under which they installed on the District's property a pole designed to support antenna equipment and transmission wires for wireless communications signals. The contract required Cingular Wireless and Tower Holdings to pay a monthly rent, plus a specified share of revenue received from third parties. The complaint alleges

that the contract was breached when appropriate revenue sharing did not occur due to the alleged tortious interference with the contract by AT&T.

Defendants moved to dismiss the complaint. On March 27, 2017, this Court granted that motion in part, retaining only the breach of contract claim (count one) against Cingular Wireless and Tower Holdings, and the tortious interference with contract claim (count three) against AT&T. (*See* Doc. No. 23.) The Court also advised that it would dismiss the punitive damages claim contained in count three "unless plaintiff files . . . an amended complaint that sufficiently pleads facts to support an inference of actual malice." (Doc. No. 23 at 936.[1])

Plaintiff timely filed its first amended complaint (Doc. No. 27 ["FAC"]), which includes significantly more factual allegations relating to AT&T's alleged interference with the other two defendants' performance (or alleged lack thereof) of their contract with the District. Defendants promptly filed the instant motion to dismiss, again seeking dismissal of the tortious interference claim against AT&T (FAC, Count Two) and any claim for punitive damages against any defendant.

## II. DISCUSSION

**A.     Legal Standard on a Rule 12(b)(6) Motion**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570).[2] "While

---

[1] All page number references are to the page identification number generated by the Court's electronic docketing system.

[2] The Court notes that here, where jurisdiction is based on diversity and all the claims are raised under Ohio common law, the Court applies the substantive law of Ohio to determine whether a particular claim has been stated. *City of Cleveland v. Ameriquest Mortg. Secs., Inc.*, 615 F.3d 496, 502 (6th Cir. 2010) (citations omitted).

legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "The court need not, however, accept unwarranted factual inferences." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

**B.     Analysis**

Although skeptical of its viability, the Court retained the tortious interference with contract claim against AT&T in its ruling on the motion to dismiss the original complaint. (*See* Doc. No. 23 at 931, n.8.) AT&T moves again for dismissal of the claim, arguing that plaintiff's first amended complaint still fails to plead facts sufficient to support the claim under the *Twombly/Iqbal* pleading standard.

Plaintiff initially asserts that AT&T should not be permitted to re-argue matters that have already been decided, namely, that the tort claim survives against AT&T. (Opp'n at 1198.) Plaintiff claims that this motion is really a motion for reconsideration, which should be denied. But defendants are correct in observing that, where new allegations are raised in an amended complaint, a defendant is permitted to again seek dismissal of a claim allegedly supported by those allegations. (Reply at 1236, citing *Hild v. Bank of America, N.A.*, No. EDCV 14-2126, 2015 WL 1813571, at *4 (C.D. Cal. Apr. 21, 2015)); *see also*, *Wilson v. Buckeye Steel Castings Co.*, No. 2:99-CV-1300, 2001 WL 1681130, at *4 (S.D. Ohio Sept. 25, 2001) ("[O]rders pertaining to motions to dismiss do not constitute the law of the case."), citing *Farmer v. Rountree*, 252 F.2d 490, 491 (6th Cir. 1958).

3

### 1. The Tortious Interference with Contract Claim (Count Two)

The Ohio Supreme Court has identified the elements of a claim of tortious interference with a contract as "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853 (Ohio 1999), paragraph one of the syllabus (affirming and following *Kenty v. Transam. Premium Ins. Co.*, 650 N.E.2d 863 (Ohio 1995), paragraph two of the syllabus).

Defendants' new motion to dismiss the tortious interference claim against AT&T challenges primarily plaintiff's pleading of the third and fifth elements. Defendants argue that plaintiff (1) fails to demonstrate how the supposed relabeling scheme and alleged concealment interfered with the lease agreement and its amendments; and (2) does not (and cannot) attribute specific damages to AT&T's alleged tortious interference, separate and apart from the damages arising from any breach of contract.

With respect to defendants' argument regarding the third element and alleged relabeling scheme, plaintiff claims that AT&T crafted and implemented a scheme by which AT&T's subsidiaries could evade revenue sharing payments to landowners, such as plaintiff, by relabeling the landowner's site as a "managed site" rather than a "leased site." (FAC ¶¶ 42-49.) Plaintiff distills its tortious interference claim against AT&T in paragraph 81 of the FAC as follows:

> But for [AT&T] contractually implementing the re-labeling scheme through the Master Agreement, Tower Holdings and [Cingular Wireless] would have no alleged excuse for not complying with the revenue obligations under the Lease with the School.

Plaintiff acknowledges, however, that the alleged "relabeling scheme is a distinction without a difference" and revenue payments are due either way under the contract. (FAC ¶¶ 50,

4

57 (the contract entitles plaintiff to revenues "regardless of whether its Premises has been labeled as a 'Leased Site' or 'Managed Site.'").) Plaintiff argues that it is entitled to revenues based on section 10 of the contract, which provides that "Lessee agrees to share the rent, revenue or other consideration received from any sublessee or other party *using* the Premises," and that both "use of the Premises" and "revenue" are broadly defined. (*See* FAC ¶¶ 14-16 (emphasis added).) Defendants reason that, if the labeling of the site is irrelevant to plaintiff's entitlement to revenue sharing under the contract, AT&T's alleged relabeling "scheme" did not induce or cause the claimed breach of contract.

The Court agrees. In Ohio, "intentional procurement" of a breach "refers to conduct that *causes* the third party to breach the contract, or that leaves the third party with no choice but to breach the contract." *Union of Needletrades, Indus. & Textile Empl. AFL-CIO v. Am. Capital Strategies, Ltd.*, 546 F. Supp. 2d 546, 560-61 (S.D. Ohio 2008) (emphasis added) (citation omitted); *Mundinger v. Lamson & Sessions Co.*, No. 4:08CV1226, 2011 WL 13118867, at *4 (N.D. Ohio Feb. 22, 2011) (same) (citing Restatement (Second) of Torts § 766 cmt. h (1979). Whether plaintiff is entitled to revenues under the contract is an issue of contract interpretation, not how the premises are labeled. Plaintiff concedes that, *regardless* of how the property is labeled, defendants' failure to pay revenues is a breach (under plaintiff's interpretation of the contract). Thus, AT&T's alleged labeling scheme is not the cause of the purported breach, and plaintiff's tortious interference claim does not satisfy the third element of a tortious interference with contract claim.

Defendants' second argument relates to plaintiff's failure to allege separate damages relating to the tort in count two. "[T]he mere existence of a plaintiff's inchoate cause of action against one party for breach of contract does not foreclose an action in tort against another party

for all damages suffered by reason of the latter's inducement of such a breach." *Davison Fuel & Dock Co. v. Pickands Mather & Co.*, 376 N.E.2d 965, 968 (Ohio Ct. App. 1977) (citations omitted). That said, "the fact that a plaintiff has separate and independent causes of action in contract and in tort does not permit him to recover more than the amount of damage actually suffered as a consequence of the injury resulting from the wrongful breach of contract." *Id.* (citations omitted). Defendants argue that "despite the opportunity to amend its Complaint, [plaintiff] still fails to plead any specific damages beyond the loss allegedly caused by [the] purported breach of [contract]." (Mot. at 1169.)[3]

In fact, plaintiff concedes that the damages are the same. (Opp'n at 1207-08 ("Naturally, the damages caused by the tortious interference with contract will be consistent with the damages caused by the failure to perform the contract (*i.e.*, the breach).").) Defendants are correct that, if plaintiff "fails to *allege* and prove the existence of additional damages attributable solely to the wrongful acts of interference by the alleged tortfeasor, he is precluded from any further recovery against a defendant in a . . . tort action." *Davison Fuel*, 376 N.E.2d at 968 (emphasis added). This is an important point because, assuming for the sake of argument that plaintiff prevails on the breach of contract claim, there can be no separate recovery against AT&T absent failure to prove "resulting damages[,]" which is interpreted as "additional damages" beyond contract damages.[4] *Id.* As a consequence, plaintiff's complete failure to *allege* such additional damages is not merely a flaw in its pleading. Rather, where, as here, plaintiff has already been afforded an opportunity to amend the complaint, that failure is fatal to its claim.

---

[3] *See also* FAC ¶¶ 69-72, 84-85, and Prayer for Relief a. and b.

[4] Conversely, if plaintiff fails to prove a breach of contract by Cingular Wireless and/or Tower Holdings, then the tort claim against AT&T fails automatically because the third element of the tort claim is not established.

For these reasons, defendant AT&T is entitled to dismissal of the tortious interference claim. As this is the only claim leveled against AT&T, it is dismissed from the lawsuit.

### 2. The Claims for Punitive Damages

Plaintiffs' FAC alleges entitlement to punitive damages. (FAC ¶¶ 72, 85.) Because the tortious interference claim is dismissed, there is no entitlement to punitive damages against AT&T. Further, the Court has already ruled that there is no basis for punitive damages with respect to the breach of contract claim. Plaintiff does not oppose dismissal of punitive damages on count one. (*See* Opp'n at 1213.)

Accordingly, any claim for punitive damages is dismissed from the complaint.

### III. CONCLUSION

For the reasons set forth herein, defendants' motion to dismiss (Doc. No. 28) is granted. Count Two of the first amended complaint is dismissed, also resulting in the dismissal of defendant AT&T. The case will proceed on Count One of the first amended complaint as against Cingular Wireless and Tower Holdings.

**IT IS SO ORDERED**.

Dated: October 5, 2017

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**